**PINEY WOODS COUNTRY LIFE SCHOOL, et al.   Plaintiffs**

v.

**SHELL OIL COMPANY Defendant**

**No. 3:74–CV–307WS.**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 11, 1999.

---

Ernest G. Taylor, Jr., Ernest G. Taylor, Jr., Attorney, Jeffery P. Reynolds, Jeffery P. Reynolds, P.A., Jackson, MS, for the Piney Woods Country Life School, Ridgeway Management, Inc., D'Lo Royalties, Inc., James H. Stewart, Jr., Rubinette Stewart, Diana Whitehead Stewart, Milton Monroe Stewart, Sr., Willard Stewart Mitchell, Mrs., Virginia Hansell Stewart, plaintiffs.

Paul H. Stephenson, III, Watkins & Eager, Jackson, MS, for Shell Oil Company, defendants.

### MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is defendant Shell Oil Company's motion for partial summary

judgment filed pursuant to Rule 56(b), Federal Rules of Civil Procedure.[1] By its motion, Shell Oil Company (hereinafter "Shell") seeks to persuade this court that the claims against Shell by royalty owners (hereinafter the "excluded royalty owners") who only recently elected to be included in this class action lawsuit between plaintiffs and Shell over royalty payments are time-barred by § 15–1–49,[2] Miss.Code Ann. (1972). Plaintiffs' class certification was authorized under Rule 23 of the Federal Rules of Civil Procedure.[3]

Plaintiffs' original complaint had sought to certify a class which included "all royalty owners in the Thomasville Field, Piney Woods Field, Southwest Piney Woods Field, or other Field whose gas is being, has been, and/or *will be processed through Shell's Thomasville well production facility, ...*" The class as certified by Judge Russell's Order dated December 15, 1978, was comprised of 77 royalty owners. The plaintiffs now seek to add approximately fifty more royalty owners to the original class, contending that their respective claims reached this court's jurisdictional minimum only after Judge Russell's 1978 Order, and after this court's finding that underpayment of royalty might entitle some of them to an award damages.

According to Shell, the final class certification entered by the Honorable Judge Dan M. Russell, Jr., in December of 1978 made no provision for the addition of future class members. Judge Russell, the first of several judges to whom this marathon lawsuit was entrusted, filed an Order dated December 15, 1978, which *finally* certified the class in the instant case to include "all individuals or entities who are royalty owners in the Thomasville, Piney Woods, and Southwest Piney Woods Fields whose gas is being processed through Shell Oil Company's Thomasville plant located in Thomasville, Mississippi, whose claims exceed the jurisdictional amount of $10,000.00 or over." Thus, in his December 15, 1978, Order, Judge Russell determined that the class should be limited only to those royalty owners whose gas was already being processed and who already had attained the jurisdictional claim for damages of $10,000.00. Therefore, according to Shell, any royalty owners who met the broader definition of the class set forth in the original complaint were excluded by Judge Russell's Order dated December 15, 1978, and were required to take steps to

1. Rule 56(b) of the Federal Rules of Civil Procedure Rule 56(b) of the Federal Rules of Civil Procedure provides:

    (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Mississippi's general personal injury statute for injuries not otherwise provided for by statute is Miss.Code Ann. § 15–1–49. It once provided for a six-year limitation period which was reduced to three years effective March 12, 1990 (see footnote 11 below).

3. Rule 23(a) of the Federal Rules of Civil Procedure provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b)(3) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

protect their interests once they had been excluded by Judge Russell's narrower definition of the class. Shell concludes that the failure of these putative class members to take action prior to the end of November of 1988 rendered their claims time-barred.[4]

The plaintiffs disagree, arguing that the statute of limitations was tolled by this court's Order dated December 29, 1986,[5] wherein this court postponed consideration of two matters—notice to the current class members and expansion of the class—until after a final determination of whether the plaintiffs were entitled to recover damages. Inasmuch as the statute of limitations was tolled, argue plaintiffs, Shell's motion for partial summary judgment should be denied.

For the reasons that follow, this court is persuaded that the royalty owners in question were excluded from the class by Judge Russell's December 1978 Order, and that this class action thereafter afforded them no protection against the applicable statute of limitations. Inasmuch as the applicable Mississippi statute of limitations was six years, the excluded royalty owners' claims expired in December of 1984, almost two years prior to this court's Order dated December 29, 1986, and this court is further convinced that plaintiffs have not presented any basis for this court's finding of equitable tolling.

## BACKGROUND

This case was certified as a class action on December 15, 1978, and went to trial in 1979 before the Honorable Dan Russell. On May 3, 1982, the district court issued an opinion denying virtually all of the claims of the class for damages. *See Piney Woods Country Life School, et al. v. Shell Oil Company,* 539 F.Supp. 957 (S.D.Miss.1982) (*"Piney Woods I"*). The plaintiffs appealed the merits of the court's decision, but did not challenge the court's ruling on class certification. On March 8, 1984, the United States Court of Appeals for the Fifth Circuit, while affirming part of the district court's ruling, held that the royalty owners were entitled to be paid royalties based upon the market value of natural gas at the time of production rather than at the time of the sales contract. The Fifth Circuit then remanded the lawsuit back to the district court for a determination of what constituted market value of the plaintiffs' gas. *See Piney Woods Country Life School, et al. v. Shell Oil Company,* 726 F.2d 225 (5th Cir.1984) (*"Piney Woods II"*), cert. denied, 471 U.S. 1005, 105 S.Ct. 1868, 85 L.Ed.2d 161 (1985). The Fifth Circuit did not disturb the district court's class certification.

After inheriting this case in 1985 from a succession of district judges, this court

---

**4.** Shell explains that it does not assert the statute of limitations defense against any successor-in-interest to those persons or entities found to be members of the class in 1978.

**5.** Once this case was remanded by the Fifth Circuit for reconsideration of what constituted market price and other issues, the plaintiffs moved for supplemental notification of the previously certified Rule 23(b)(3) class in order to substitute parties or to add those persons whose claims then had grown to exceed the $10,000.00 jurisdictional amount required for inclusion in the class. On December 29, 1986, this court entered an order

postponing supplemental notice to the class, noting that when the issues of "market value" and "processing costs" were finally resolved in this case—issues pertaining to whether Shell was liable to any or all of the plaintiffs for underpayment of royalties—"this court will readily entertain plaintiffs' motion for a proposed notice to class members with reference to the substitution of plaintiffs, heirs, assignees, and the adding of new class members whose claims have, since initial certification, exceeded the $10,000.00 jurisdictional amount."

held a bench trial in 1988 ("Piney Woods III") on several issues, including the question of what constituted market value. This court held that Shell's prices under its long-term intrastate contracts with Mississippi Chemical Company and Mississippi Power & Light Company were at all times the fair market value of the gas sold in the intrastate market; that market value was limited by federal price ceilings; that processing costs charged by Shell were reasonable; and that the royalty owners' share of plant operation fuel costs was equal to their claims for royalty payments on this fuel. Thus, this court found no basis for awarding damages and the plaintiffs appealed.

In *Piney Woods Country Life School, et al. v. Shell Oil Company,* 905 F.2d 840 (5th Cir.1990) ("*Piney Woods IV*"), the Fifth Circuit affirmed this court's holdings in all respects except for the finding that Shell's long-term intrastate contract price was the fair market value of certain classifications of Thomasville gas between 1979 and 1987. While the Fifth Circuit found no error in this court's finding that Shell's contract price and market value were the same between 1972 and 1978, the Fifth Circuit was concerned about the effect of changing federal regulations, or "deregulation," on market value after 1978. The Fifth Circuit then vacated and remanded this court's Memorandum Opinion and Order, but only with regard to this court's holding that the market value and Shell's long-term intrastate contract price for Thomasville natural gas were the same for

deregulated gas from 1979 through 1986. The Fifth Circuit cited Exhibit P–155 as the document which might guide this court's determination of whether the plaintiffs had suffered any damages, particularly if Exhibit P–155 supported the plaintiffs' contention that market value of Thomasville gas exceeded the actual proceeds received by Shell under its long-term contract between 1979 and 1986.

The period between 1990 and 1995 was punctuated with several hearings where counsel provided this court with meaningful clarification of various matters. The parties argued and briefed requests for reconsideration of a number of issues, recalculated the production volumes for the wells in question using Exhibit P–155, and argued and briefed extensively the issue of damages. During this period, the parties also engaged in a series of serious efforts to settle this case.

In a Memorandum Opinion and Order dated June 6, 1995, this court rendered its decision holding that Shell was liable for underpayment of royalties to the owners of Section 107 wells in the Thomasville, Piney Woods Southwest, and Piney Woods natural gas fields for the years 1978 through 1982.[6] This was the first finding that any plaintiffs in the class were entitled to damages of any sort since the commencement of this lawsuit.

The parties filed their respective appeals and on May 15, 1997, the Fifth Circuit affirmed this court's finding that damages

---

**6.** This court found that a window for calculating damages existed between 1978 and 1982 because the Shell royalty agreement provided for calculation of royalties based on market price rather than on the method used by Shell which calculated royalties based on actual proceeds. This damages window was created by an extraordinary rise in the market price for natural gas which soared and then slumped between 1978 and 1986. This court

concluded that deregulated gas, or Section 107 gas, could have been sold in the interstate market for the higher prices prevailing there between 1978 and 1982. This court found no damages after 1982 because Shell began selling all Section 107 gas at the interstate market price between 1983 and 1985. After 1985, this court found no significant discrepancy between Shell's sales price and the market price for natural gas.

were owed to those persons owning Section 107 wells in the aforementioned fields between 1978 and 1982. The plaintiffs asked the Fifth Circuit whether, after remand, it would be necessary to notify prospective plaintiffs whose claims may have reached jurisdictional amounts in excess of $10,000.00 over the life of the litigation. The Fifth Circuit refused to address the question, noting that this was a matter for the district court's consideration. Consequently, on remand, the plaintiffs renewed their request for notice to all the excluded royalty owners whose claims now had reached the amount of $10,000.00 or more. Additionally, plaintiffs sought to notify those persons with claims not exceeding $10,000.00 pursuant to Title 28 U.S.C. § 1367(a) and (b),[7] contending that these plaintiffs had entered this case through the portal of this court's supplemental jurisdiction over state law matters relating to

federal litigation. All these putative class members are the same royalty owners originally excluded from the class by Judge Russell's 1978 Order. Relying on the language of this court's 1986 Order that the matter of class notification would be addressed after a final ruling on the question of liability, the plaintiffs argued that the time was ripe for notification and for expanding the class to include all the previously excluded royalty owners having interests in Section 107 wells.

Shell objected to the plaintiffs' proposed notice, contending that any supplemental notice issued only after a decision on the merits of the case violated Rules 23(c)(1)[8] and (2)[9] of the Federal Rules of Civil Procedure. Shell contended that Rule 23 does not permit modification of a class after a ruling on the merits of a damages claim has been rendered by the court,

---

7. Effective after December 1, 1990, and applicable to causes of action commenced on or after that date, Title 28 U.S.C. § 1367(a) and (b) provide as follows:

   (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.
   (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20 or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such

rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

8. Rule 23(c)(1) provides in pertinent part that, "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, *and may be altered or amended before the decision on the merits* (emphasis added)."

9. Federal Rule of Civil Procedure 23(c)(2) provides that, "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that: (A) the court will exclude the member of the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel."

arguing that Rule 23(c)(2) was adopted to prevent intervention by a plaintiff in a class action after an adjudication favoring the class had taken place.

This court rejected this argument in an Order dated September 17, 1997, granting the plaintiffs' request for supplemental notice to prospective plaintiffs whose claims had exceeded the jurisdictional amount of $10,000.00 during the pendency of this litigation. Relying on cases such as *Salazar–Calderon v. Presidio Valley Farmers Association*, 863 F.2d 384, 389 (5th Cir.1989) (holding that a class could be certified after a decision on the merits, notwithstanding Rule 23(c)(1)), and *Postow v. OBA Federal Savings and Loan Association*, 627 F.2d 1370, 1380–84 (D.C.Cir.1980) ("equitable reasons" may allow post-judgment certification and notice in cases in which the plaintiffs have succeeded on summary judgment in certain circumstances), as well as many other authorities, this court held that Rule 23(c)(1)'s apparent prohibition of certification or notification of a class after judgment on the merits was not absolute, and permitted, at least in part, the notification proposed by the plaintiffs.[10] This court denied that portion of the plaintiffs' proposed notification which sought to include prospective plaintiffs whose claims had not yet reached the minimum jurisdictional amount of $10,000.00 because their request to be included relied on the amended version of Title 28 U.S.C. § 1367. The current

amended version of § 1367 was not effective until December 1, 1990, sixteen years after this lawsuit was filed, and was not retroactive. So, this court found that the amended statute did not apply to the instant case and denied that portion of the motion seeking to serve notice on prospective plaintiffs whose claims had not yet reached the applicable jurisdictional minimum.

Now, Shell has rallied its forces once again to defend from expansion the class as it originally was defined and limited in Judge Russell's 1978 Order, contending this time that any claims the excluded royalty owners may have had for underpayment of royalty between 1978 and 1982 are time-barred by Mississippi's general statute of limitations, Mississippi Code Annotated § 15–1–49.[11] Shell argues that those royalty owners whose claims had not yet exceeded $10,000.00 in 1978, but whose claims now have reached that amount, should have filed state court lawsuits at that time, or should have sought intervention in this lawsuit once their claims reached this court's jurisdictional minimum. Their failure to take either of these avenues of approach, or to appeal to the Fifth Circuit their exclusion from the class by Judge Russell's 1978 Order, says Shell, now bars their entry into this lawsuit because the statute of limitations has run.

According to Shell's argument, the statute of limitations ran in 1984, six years

---

**10.** This court also found that the plaintiffs' supplemental notification of the class did not violate Rule 23(c)(2). At that time Shell agreed that notice with a mandatory opt-in provision, plus notice to the class of this court's prior rulings, would be an equitable approach. Thus, supplemental notification was permitted to proceed, subject to this court's ruling on the § 1367 issue.

**11.** Mississippi's general personal injury statute for injuries not otherwise provided for,

Miss.Code Ann. § 15–1–49, once provided for a six-year limitation period. The six-year period was reduced to three years effective March 12, 1990. However, it is the earlier version of the statute that applies in the instant case, because the amended version applies only to causes of action accruing after July 1, 1989. *See Alvarez v. Coleman*, 642 So.2d 361, 373 n. 11 (Miss.1994). This case began in 1974.

after Judge Russell's 1978 Order. Alternatively, says Shell, any underpayment of royalty claims of Section 107 well owners which arose between November of 1978 and November of 1982 expired by November 1988. None of the excluded royalty owners, says Shell, filed suit or took any other action to preserve their claims prior to or by November of 1988. Citing *In re Placid Oil Co.*, 932 F.2d 394 (5th Cir.1991) (applying Texas law) in response to any tolling argument, Shell argues that any newly appearing royalty owners bear the burden of proving an affirmative defense to the statute of limitations. Mississippi case law is in accord. *See Sullivan v. Trustmark National Bank*, 653 So.2d 930, 931 (Miss.1995) (burden of proof is on plaintiff seeking to toll relevant statute of limitations based on defendant's absence from state to show that defendant was absent and not amenable to service), citing *Gulf National Bank v. King*, 362 So.2d 1253, 1254 (Miss.1978); *French v. Davis*, 38 Miss. 218 (1859); and *Dent v. Jones*, 50 Miss. 265 (1874).

Plaintiffs respond that if supplemental notice had been issued in 1985 as the plaintiffs had requested, then additional class members would have received notice within the six-year statute of limitations. The claims of the royalty owners excluded by Judge Russell's 1978 Order, say plaintiffs, should not now be dismissed at this time because notice to them was delayed by this court's 1986 Order. To hold now that their claims now are time-barred, argue plaintiffs, would undercut the intent of this court's 1986 Order.

Of course, the plaintiffs' contention with regard to their request for supplemental notice in 1985 presumes that they were entitled to such notice on behalf of previously excluded royalty owners at that time. Plaintiffs assume that this court, by its 1986 Order, intended merely to delay expansion of the class until a determination of damages had been made. This court's actual intent was to set this issue aside entirely and not revisit it unless there was a subsequent finding that any or all of the class members were entitled to damages. This court contemplated that any supplemental notice would apply to heirs, assigns, and successors in interest who would have to be notified in the event of a damages finding. This court also contemplated royalty owners whose claims might reach this court's jurisdictional minimum during the pendency of this litigation, but no determination was made or even considered in 1986 regarding the request of these previously excluded royalty owners to be included in the class. Rather than address this issue in 1986, this court postponed the matter, realizing that if no damages were found, there would be no need to notify even the current class members, much less any need to expand the class of those to be notified.

So, in its Order dated September 17, 1997, when this court noted that the plaintiffs had the right to rely on this court's pronouncement in 1986, this court was making no final pronouncement on the question of expanding the class. This court's statement that the putative plaintiffs—the excluded royalty owners—were not placed on notice by "denial of class certification which would have required them to file their own lawsuits" as were the *Salazar–Calderon* plaintiffs failed to take into account that they were part of the plaintiff class delineated in the original complaint and were excluded by Judge Russell's 1978 Order. The 1978 Order itself served as notice of their exclusion from the class and alerted them to take action to protect their interests.

This court also found in its September 17, 1997, Order that no prejudice would befall Shell by permitting supplemental

notification of the class, even if it included those persons whose claims only reached the jurisdictional minimum after Judge Russell's 1978 Order, because, as this court stated, any persons so notified would still be subject to Shell's objections based on res judicata and the statute of limitations. This is where the case currently stands.

## ANALYSIS

■ Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. *Hightower v. Texas Hospital Association*, 65 F.3d 443 (5th Cir.1995), citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment requires not only determining whether there are material fact issues, but also, if there are none, whether the prevailing party is entitled to judgment as a matter of law. Both considerations are legal issues; neither is a finding of fact. *Douglass v. United Services Automobile Association*, 65 F.3d 452, 458 (5th Cir.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

This court finds that the defendants have met their burden of showing that there are no material fact issues to preclude granting partial summary judgment on Shell's argument that the claims of the excluded royalty owners are barred by the applicable Mississippi statute of limitations.

■ Generally speaking, a pending class action will toll any applicable statute of limitations for all putative members of the class. *See American Pipe and Construction Company v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 764, 38 L.Ed.2d 713 (1974); *accord National Association of Government Employees v. City Public Service Board of San Antonio, Texas*, 40 F.3d 698, 715 n. 25 (5th Cir.1994) (the filing of the putative class action tolls the running of limitations for all purported class members). However, class action tolling ceases once the court rules on class certification, and excluded claimants then must seek to protect their respective interests in ways other than by participation in the class. *American Pipe*, 94 S.Ct. at 770, 94 S.Ct. 756 (measuring time remaining for individual plaintiff to file suit from date district court denied certification). *Also see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352–55, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983) (after class certification is denied, class members may choose to file their own suits). In other words, "after the district court rules on certification, the erstwhile putative class members 'are either nonparties to the suit and ineligible to participate in a recovery or to be bound by a judgment, or else they are full members who must abide by the final judgment, whether favorable or adverse.'" *Id.*

■ Cases from the Fifth and Eleventh Circuits further hold that tolling ends once class certification is denied by the trial court. In *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334, 1351 (5th Cir.1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986) (*Salazar–Calderon I*), the trial court originally denied the plaintiffs' class certification request. While this particular finding was affirmed by the Fifth Circuit, the case was remanded for reconsideration of other issues. Inasmuch as the case was being remanded anyway, the Fifth Circuit suggested that the trial court reconsider the matter of class certification. The trial court did reconsider the class certification

question and reversed itself, allowing a class to be certified. However, after this ruling the trial court was faced with a new group of putative plaintiffs who submitted class claim forms after the trial court had certified the class. The problem with their submissions was that the two-year statute of limitations had run during the time between the trial court's original denial of a class in *Salazar–Calderon I* and the trial court's subsequent finding of a class after the case had been remanded by the Fifth Circuit. The trial court refused to allow the new group of plaintiffs to join the class action, and the case again was appealed.

In *Salazar–Calderon v. Presidio Valley Farmers Ass'n*, 863 F.2d 384 (5th Cir.1985) (*Salazar–Calderon II*), the Fifth Circuit noted that,

> [w]hen an appellate court overturns a district court's denial of class certification, the date of original filing, rather than the date of eventual certification, is used to determine whether the claims of potential class members are time-barred. *Satterwhite v. City of Greenville*, 578 F.2d 987, 997 (5th Cir.1978) (en banc). Were this rule not to apply, appeals of certification would most often be meaningless. However, here we affirmed denial of class certification, even though we invited the district court to reconsider. *Salazar*, 765 F.2d at 1350. The trial court's reconsideration of the certification issue did not, and could not, diminish the import of our affirmance for time preclusion issues. *The statute should not toll for those workers who did not intervene or file individual claims after certification was denied.*

*Id.* at 390. So, the Fifth Circuit in the *Salazar–Calderon* cases measured the statute of limitations from the date the trial court denied class certification, notwithstanding that: (1) nearly identical class actions were filed in another district

court soon after the first court denied certification; (2) the individual plaintiffs tried unsuccessfully to intervene after the denial of certification; and (3) the named plaintiffs challenged the first denial of certification on appeal. Seemingly, the *Salazar–Calderon* decisions demonstrate that the statute of limitations will continue to run from the date of the trial court's decision on class certification, notwithstanding subsequently filed class actions, motions to intervene, or challenges to the trial court's certification ruling on appeal. *See also Pearson v. Ecological Science Corp.*, 522 F.2d 171, 178 (5th Cir.1975) (the commencement of a class action tolls the applicable statute of limitations as to all members of the class, until the propriety of maintaining a class action is determined by the trial court), *cert. denied sub nom. Skydell v. Ecological Science Corporation*, 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976).

The Eleventh Circuit case of *Armstrong v. Martin Marietta Corporation*, 138 F.3d 1374, 1380–81 (11th Cir.1998), also makes this point, holding that once the district court enters an order denying class certification, the excluded putative class members are put on notice that they must act independently to protect their rights, citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 399, 97 S.Ct. 2464, 2472, 53 L.Ed.2d 423 (1977). Moreover, said the *Armstrong* Court, "[w]hen the district court denies class certification, the named plaintiffs no longer have a duty to advance the interests of the excluded putative class members." *Id.* Finally, the *Armstrong* Court rejected the argument that putative class members did not have to act to preserve their rights until after final judgment on the merits because a ruling on class certification is interlocutory in nature and could be reconsidered by the trial court or reversed by an appellate court. *Id.*, citing the Fifth Circuit's decision in

*Pearson v. Ecological Science Corporation*, 522 F.2d at 177 (rejecting the argument that the interlocutory nature of the district court's order denying class certification requires the named plaintiffs to exercise a continuing fiduciary duty to the putative class members).

■ Furthermore, a class action can toll the statute of limitations only once and class members cannot "piggyback" tolling periods by filing successive class actions, motions for reconsideration of prior class certification rulings, or motions to expand the class. In *Salazar–Calderon I*, the Fifth Circuit stated that "[p]laintiffs have no authority for their contention that putative class members may piggyback one class action onto another and thus toll the statute of limitations indefinitely, nor have we found any." *Id.*, 765 F.2d at 1351. Thus, the Fifth Circuit concluded that a timely filed class action did not suspend the applicable statute of limitations for the later entry into the lawsuit by putative class members whose claims had lapsed in the interim. *See Salazar–Calderon II*, 863 F.2d at 390 (statute should not toll for those workers who did not intervene or file individual claims after certification was denied); *see also Armstrong*, 138 F.3d at 1384, citing with approval the holding in *Salazar–Calderon II* that the statute of limitations begins to run again upon entry of the district court's order denying class certification, even if the district court later reconsiders the issue and certifies a class.

■ This court holds that the claims of those royalty owners who were excluded from the class by Judge Russell's December 1978 Order now have lapsed and are barred by the applicable statute of limitations. By reaching this conclusion, this court specifically rejects the plaintiffs' contention that this court did not intend for additional class members, whose claims had grown beyond $10,000.00, to file individual lawsuits to protect their claims when the court entered its December 29, 1986, Order. As previously noted, this court's 1986 Order postponed this matter based on the realization that if no liability was found, there would be no need to notify even the current class members, much less any need to expand the class of those to be notified. This court also rejects the plaintiffs' implication that the statute of limitation did not run because this court's 1986 Order was entered within six years of the time the plaintiffs' damages ceased accruing. The issue is not determined by the date that damages ceased accruing. Rather, as previously stated, tolling ends once class certification is denied by the trial court. *See Salazar Calderon I, Salazar–Calderon II, Armstrong*, and *American Pipe*. This court's 1986 Order was entered almost two years after the claims of the putative class members in the instant case had expired. Once Judge Russell excluded these royalty owners from the class on December 15, 1978, they no longer had the right to rely on the class representatives to protect their interests, and the statute of limitation ran on their claims six years later, in 1984.

This court also finds that the plaintiffs' reliance on *Vaught v. Showa Denko K.K.*, 107 F.3d 1137 (5th Cir.1997), is misplaced. This case simply states in dicta that there is a strong federal policy favoring the tolling of limitations as to all *potential* members of a Rule 23 class action, the case does not hold that tolling must continue in favor of excluded plaintiffs or future putative class members after the court's ruling on certification.

### CONCLUSION

Therefore, this court finds well taken the motion of Shell Oil Company for a partial summary judgment. This court holds that the claims against Shell by roy-

alty owners previously excluded from this class action by the Order of the Honorable Judge Dan M. Russell, Jr., on December 15, 1978, and who only recently elected to be included in this class action, now are time-barred by the applicable Mississippi statute of limitations, Miss.Code Ann. § 15–1–49 (1972).

