United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 7, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-60766

_____

PATRICIA BOONE, ET AL,

                                                    Plaintiffs,


PATRICIA BOONE; MANDOLYN BOYD;
MARY JORDAN; MARY MCBRIDE;
ARTHAWAY MCCULLOUGH; CONSTANCE
MCFARLAND; EUGENE PAINE; BERNICE
PAINE; MARY SPRATT; PEGGY WASHINGTON,

                                          Plaintiffs-Appellants,


        versus


CITIGROUP INC; CITIFINANCIAL INC;
ASSOCIATES FIRST CAPITAL CORPORATION;
ASSOCIATES CORPORATION OF NORTH AMERICA;
PAUL SPEARS; D LAVENDER; MICHELLE EASTER;
JOHN DOES 1 - 50; CITIFINANCIAL CORPORATION,

                                          Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Mississippi

_____


Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

        Appellants, all of whom are residents of Mississippi, brought

suit in Mississippi state court alleging only state law claims against five out-of-state corporations and three individual Mississippi residents. One of the corporate appellees removed the case to federal court on the ground that the three in-state residents had been improperly joined in order to defeat diversity jurisdiction. The district court denied appellants' motion to remand and granted summary judgment to appellees on the merits. Appellants appeal this disposition principally on the ground that our recent decision in *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004) (en banc) *cert. denied* 125 S. Ct. 1825 (2005) (*Smallwood II)*, establishes that the doctrine of improper joinder does not apply under the facts of this case and, accordingly, the district court lacked subject matter jurisdiction under 28 U.S.C. § 1332. We affirm.

I.

The nine appellants are residents of Mississippi.[1] Each appellant obtained at least one consumer loan from First Family Services, Inc (First Family) at First Family's offices in Aberdeen, Amory, or Tupelo, Mississippi. The most recent of these loans originated on May 12, 1998. Appellants also purchased credit insurance from First Family to insure against the possibility of default in the event of, for example, death or

---

[1] Though the style of this case includes Mary McBride as an appellant, she died while this case was before the district court and her estate has chosen not to pursue her claims.

serious illness.

In October 2001, appellants, later joined by several since-dismissed co-plaintiffs, filed a complaint in the circuit court of Monroe County, Mississippi.  They generally alleged that First Family engaged in a pattern of unlawful misrepresentation and non-disclosure in connection with the loans and credit insurance.  Appellants contend that First Family exploited their lack of sophistication in inducing them to buy credit and insurance products they did not need, did not want, or did not know they had purchased.  Appellants do not allege that the relevant terms of the transactions were not disclosed in the written instruments themselves.  Rather, they contend that First Family and its employees orally misrepresented what was in the written instruments, which, appellants maintain, they could not understand because they lacked the sophistication to do so.[2] Appellants sought to recover on state law claims for common law fraud, fraud *in factum*, constructive fraud, civil conspiracy, unconscionability, economic duress, fraudulent deceit, continuing fraudulent misrepresentation, fraudulent concealment, and the intentional infliction of emotional distress.  The removed state court complaint expressly limits the claims asserted to those

[2] Appellees dispute that appellants were at their mercy. Appellees cite evidence, including deposition testimony, establishing that appellants all have experience with consumer credit, mortgages, banking, and other aspects of personal finance.

3

arising under Mississippi law and affirmatively excludes any federal claims.

Appellants named eight defendants, five of which were corporations which were citizens of states other than Mississippi and three of whom were individual Mississippi residents.[3] Significantly, appellants did not sue First Family. Appellants did, however, sue two related entities, Associates First Capital Corporation and Associates Corporation of North America, both of which are Delaware corporations. Associates First Capital Corporation is the parent corporation of Associates Corporation of North America and First Family is a subsidiary of one or the other. Appellants also sued Citigroup, Inc., a Delaware corporation, because on August 30, 2000 Citigroup, Inc. acquired, and became the successor in interest to, Associates First Capital Corporation. Citifinancial Corporation and Citifinancial, Inc., each likewise a Delaware corporation owned by Citigroup, Inc., were also named defendants because First Family was apparently merged into (or sold all its assets to) the Citifinancial entities. It is undisputed that each of the five corporate defendants is and was at all relevant times a citizen of a state other than Mississippi under 28 U.S.C. § 1332(c)(1) and that the amount in controversy exceeded $75,000.

_____

[3] The complaint also named fifty "John Doe" defendants but the complaint was never amended to include any person or entity in addition to the eight named defendants.

4

Finally, appellants also named three individual Mississippi residents. The individual defendants had been at all relevant times employees of First Family and were alleged to have been directly or indirectly involved in the loan and credit insurance process for at least some of the appellants. Defendant Paul Spears supervised several First Family branches. Defendant Durlynn Lavender managed the First Family branch in Aberdeen, Mississippi. Defendant Michelle Easter was a loan officer at the same branch.

On November 16, 2001, Citigroup, Inc. removed the suit to the Northern District of Mississippi, contending that the three individual defendants had been improperly joined to destroy diversity jurisdiction under 28 U.S.C. § 1332 in that there was no reasonable possibility of recovery against them because, *inter alia*, the claims against them were barred by the Mississippi statute of limitations. Shortly thereafter, appellants moved to remand on the apparent ground that joinder was proper because there was a reasonable possibility that they could recover against the non-diverse appellees.[4] After allowing remand-

---

[4] We infer the apparent ground of appellants' motion to remand by reading the district court's order denying the requested relief. Appellants' memorandum in support of its motion was not in the record even though the motion itself expressly referred to a memorandum in support.

5

related discovery, the district court[5] determined: (1) recovery against the three individual defendants was indisputably precluded by Mississippi's three-year residual statute of limitations, Miss. Code. Ann. § 15-1-49; (2) appellants failed to read the loan and insurance contracts at issue and were therefore not entitled to assert that there were discrepancies between the contracts and oral representations allegedly made by the non-diverse appellees; and (3) none of the five appellants who were deposed as part of the remand-related discovery could identify a single misrepresentation made by any of the three non-diverse appellees.[6] Based on these conclusions, the district court denied the motion to remand, reasoning that the impossibility of recovery against the non-diverse appellees meant that joinder of the non-diverse appellees had been improper and thus subject matter jurisdiction existed under 28 U.S.C. § 1332.

On December 29, 2003, following the close of discovery, appellees, including the three non-diverse individual defendants, moved for summary judgment. On January 21, 2004, before they filed their memorandum in opposition to the pending motion for summary judgment, appellants filed a second motion for remand,

---

[5] The parties consented to trial by magistrate judge so references to the district court refer to proceedings conducted by the magistrate judge.

[6] The district court also summarily denied a rule 59(e) motion to reconsider the denial of remand.

6

arguing that two intervening appellate decisions, *Smallwood v. Ill. Cent. R.R. Co.*, 342 F.3d 400 (5th Cir. 2003) (*Smallwood I*), and *Collins v. Am. Home Prod. Corp.*, 343 F.3d 765 (5th Cir. 2003), established that the district court had erroneously denied remand. On February 23, 2004, the district court entered an order "withholding" any ruling on the motion to remand until May 1, 2004, or the *en banc* decision in *Smallwood*, whichever came first.[7]

In the meantime, however, appellants filed a response in opposition to summary judgment in which they apparently claimed that the statute of limitations was tolled on the grounds of fraudulent concealment and a related 1997 class action in Arizona.[8] The district court, without waiting for the May 1, 2004 deadline to expire, issued an order on April 8, 2004, granting summary judgment to all defendants. The basis of the district court's summary judgment order was that appellants' claims were untimely as to all defendants under the Mississippi three-year residual statute of limitations.

---

[7] *Smallwood I* was taken *en banc* December 19, 2003. *See* 355 F.3d 357. The district court apparently selected Friday May 1, 2004, as the deadline to ensure that the parties would be able to get back on track for the pretrial conference scheduled for Monday, May 11, 2004, and the trial scheduled to begin two weeks later.

[8] Once again, the record does not contain appellants' legal memorandum. The record only contains exhibits to the memorandum which, apparently, would have argued that there remained material facts in dispute.

Appellants timely filed a Rule 59(e) motion to alter or amend the judgment, arguing that the district court erred by ruling on the merits of their claims without first addressing the threshold issue of subject matter jurisdiction raised by their second motion to remand. They also maintained that the district court erred in concluding that a class action in Arizona, and a related global settlement, did not toll the statute of limitations as to all or at least some of the diverse corporate defendants. On August 6, 2004, the district court denied the motion on the ground that, whatever the outcome of the *Smallwood* case, the statute of limitations had run on all of appellants' claims as to all defendants.

Appellants then filed a timely notice of appeal. While their appeal was pending and before briefs were due, this court issued its *en banc* decision *Smallwood II*, and it is upon this case that appellants primarily rely in challenging subject matter jurisdiction.

## II.

Appellants contend on appeal that this case should be remanded for want of subject matter jurisdiction under section 1332 because defendants interposed a "common defense" of the statute of limitations that disposed equally of all claims against all defendants and, under *Smallwood II*, such a "common

8

defense" precludes a finding of improper joinder.[9]

### A.

The denial of a motion to remand for want of subject matter jurisdiction is reviewed *de novo*. *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2004). Appellees, as the removing parties below, bear the burden of establishing jurisdiction. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997).

A motion to remand is normally analyzed with reference to the well-pleaded allegations of the complaint, which is read leniently in favor of remand under a standard similar to Rule 12(b)(6). *Smallwood II*, 385 F.3d at 573. The district court, however, may allow limited remand-related discovery, and conduct

---

[9] As a preliminary matter, we reject appellee's contention that *Smallwood II* does not apply to the instant case because it was issued after the district court entered its summary judgment. Appellees cite, among other authorities, *Bailey v. Ryan Stevedoring Co.*, for the proposition that a "change in decisional law after entry of judgment does not constitute exceptional circumstances [under FED. R. CIV. P. 60(b)(5) & (6)] and is not alone grounds for relief from a final judgment." 894 F.2d 157, 160 (5th Cir. 1990). The relevant and obvious distinction between *Bailey* and the instant case is that the change in decisional law occurred *after* Bailey lost both in the district court *and* on appeal to this court. In the instant case, on the other hand, the potentially important change in decisional law occurred while the appellants' appeal was still pending. It is well-settled that in such cases the new law must be applied with the full force of the precedent that it is. *See, e.g., Concerned Citizens of Vicksburg v. Sills*, 567 F.2d 646, 649 (5th Cir. 1978).

9

a summary judgment type inquiry thereupon.[10]  *Ibid.*

B.

Diverse defendant-appellee Citigroup removed this ostensibly non-diverse case to federal district court on the ground that appellants had improperly joined the non-diverse individual defendants, thereby destroying diversity and denying the diverse defendants a federal forum.  There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  *Smallwood II*, 385 at 573 (citing *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).  Citigroup in the district court and appellees on appeal do not allege any outright fraud in the drafting of the complaint, so this case turns on the second *Travis* test.  Following this approach, Citigroup sought to establish that joinder was improper because there was "no reasonable basis for the district court to predict that the plaintiff[s] might be able to recover against [the] in-state defendant[s]."  *Id.; see also Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000) (stating that it is insufficient for the party seeking remand to adduce a "mere theoretical possibility" of recovery against the non-diverse

---

[10] Appellants do not contend that the district court in any way erred in permitting remand-related discovery in this case.

defendant) (emphasis omitted).  In particular, Citigroup argued that, in light of remand-related discovery, there was no reason to believe that any of appellants' claims against the non-diverse appellees were timely under Mississippi's three-year statute of limitations.

The district court agreed and denied remand primarily on the ground of limitations.  The district court then exercised subject matter jurisdiction over the case under the improper joinder doctrine.  Following regular discovery, the district court ultimately granted summary judgment to all of the defendants, diverse and non-diverse alike, on the same residual statute of limitations defense.  *Smallwood II* held that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder[.]"  385 F.3d at 571.  Appellants argue that under *Smallwood II*, there was no improper joinder in this case because the same statute of limitations, if it precluded their claims against the non-diverse defendants, necessarily equally precluded all claims against all defendants.  Accordingly, appellants contend that the parties remain incompletely diverse and, consequently, that there is no federal subject matter jurisdiction over their case.

C.

11

In *Smallwood II*, plaintiff Smallwood, a Mississippi resident, was injured when her car was struck at a railroad crossing in Mississippi by a train operated by the Illinois Central Railroad Company (Illinois Central), an Illinois corporation. 385 F.3d at 571-72. The railroad crossing was maintained by the Mississippi Department of Transportation (MDOT) with equipment it had purchased using federal funds. *Ibid.* Smallwood brought suit against both Illinois Central and the MDOT in Mississippi state court solely on state law causes of action. *Ibid.* Illinois Central removed the case to federal court where it argued that Smallwood's negligence claims against the MDOT were preempted by the Federal Railroad Safety Act, 49 U.S.C. § 20101 *et seq*, and, as such, that the MDOT had been improperly joined. The district court agreed and denied remand because there was no realistic reason to believe that Smallwood could recover against the non-diverse MDOT. *Smallwood v. Ill. Cent. R.R.*, 203 F. Supp. 2d 686, 693-94 (S.D. Miss. 2002). Then, applying the law of the case doctrine, the district court granted summary judgment to Illinois Central on precisely the same preemption ground. *Smallwood v. Ill. Cent. R.R.*, 2002 U.S. Dist. LEXIS 27674, *13-17 (S.D. Miss. August 13, 2002) (noting that Smallwood had adduced no evidence or argument suggesting that the prior preemption conclusion against the MDOT did not equally compel judgment for Illinois Central).

12

The *en banc* court reversed the district court's judgment and directed remand to state court. Where, as in *Smallwood*, the diverse defendant establishes that a non-diverse defendant was improperly joined by way of a showing that equally disposes of all claims against the non-resident defendant as well, there is no improper joinder because the non-resident defendant has merely demonstrated that the plaintiff's entire case is without merit and an improper joinder inquiry is about subject matter jurisdiction, not the merits of the entire case. *Smallwood II*, 385 at 575-76 (citing *Chesapeake & O.R. Co. v. Cockrell*, 34 S. Ct. 278 (1914); *McDonal v. Abbot Laboratories*, — F.3d — (5th Cir. 2005), 2005 U.S. App. LEXIS 7177, * 15 ("As long as the asserted defense applies uniformly to all defendants and dismisses the suit as a whole, the resident defendants were no more improperly joined than the non-resident defendants."). It bears emphasizing that *Smallwood II* applies "*only* in that limited range of cases where the allegation of improper joinder rests *only* on a showing that there is no reasonable basis for predicting that state law would allow recovery against the in-state defendant and *that* showing is *equally* dispositive of *all* defendants." 385 F.3d at 576 (emphasis added). *See also id.* at 574 ("when, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-

state defendant *necessarily compels* the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit") (emphasis added); *McDonal*, *supra* (same).

Thus, the crux of *Smallwood II*'s holding is that "only" where the showing that there is no reasonable basis for predicting state law would allow the plaintiff to recover against the resident defendant is such that the *same* showing "equally" and "necessarily" "compels" the conclusion that recovery is precluded against "all" non-resident defendants, then there is no improper joinder, but simply a wholly meritless suit. That is not the situation here.

Although it is true that the district court denied remand and granted summary judgment on the basis of the same residual statute of limitations, it is not true that the statute of limitations defense assertion by the resident defendants "equally" and "necessarily" "compel[led]" dismissal of *all* claims against all the diverse defendants.

In broad strokes, appellants allege that the non-diverse appellees induced them to buy credit and insurance products by orally misrepresenting the terms of the contracts at issue. The appellants contend that this conduct constituted an array of state law frauds and the intentional infliction of emotional distress. Significantly, none of the allegations in the amended

14

complaint aver a tortious act after May 12, 1998, the origination date of the last loan at issue. This date is thus the accrual date for the most recent of appellants' claims. *See Andrus, et al. v. Ellis, et al.*, 887 So. 2d 175, 180-82 (Miss. 2004). The initial complaint, however, was filed three and a half years later on October 5, 2001, meaning that even the most recent claims against the non-diverse appellees are plainly time-barred by Mississippi's three-year residual statute of limitations.[11]

---

[11] In the section of their brief contesting summary judgment, appellants argue that summary judgment in favor of both the non-diverse and diverse appellees was error because, *inter alia*, the statute of limitations was tolled as to all appellees by their fraudulent concealment of the facts giving rise to this suit. *See* MISS. CODE ANN. § 15-1-67.

However, appellants provided no summary judgment evidence tending to support a conclusion that the statute of limitations was tolled by any fraudulent concealment on the part of any appellee. Appellants bear the burden of establishing fraudulent concealment by showing both (1) an affirmative act to conceal the underlying tortious conduct, and (2) a failure to discover the factual basis for the claims despite the exercise of due diligence. *Robinson v. Cobb*, 763 So. 2d 883, 887 (Miss. 2000). The affirmative act of concealment must have occurred after and apart from the discrete acts upon which the cause of action is premised. *Stephens v. Equitable Life Assur. Soc'y of the U.S.*, 850 So. 2d 78, 83-84 (Miss. 2003). Yet following discovery, appellants were unable to produce any summary judgment evidence of even any material misrepresentation by any of the appellees, much less a *post facto* act of concealing the facts giving rise to the fraud claims. As to infliction of emotional distress, there is no summary judgment evidence of any wrongful act done by any appellee to any appellant within the limitations period. Furthermore, appellants do not anywhere argue that they were even minimally duly diligent in the management of their affairs. Nowhere, for example, do appellants challenge the district court's finding that none of them even bothered to read the written instruments at issue. A person who fails to read his or her own loan and insurance contracts may not be characterized as having been duly diligent. *Russell v. Performance Toyota, Inc.*,

15

MISS. CODE ANN. § 15-1-49; *Nicols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 333 (Miss. 1992).

Having determined that even the most recent claims against the non-diverse appellees are conclusively barred by the residual statute of limitations, we turn now to the claims against the diverse defendants. If, but *only* if, the showing which forecloses appellants' claims against the non-diverse defendants *necessarily* and *equally compels* foreclosure of all their claims against all the diverse defendants, then *Smallwood II* applies and there was no improper joinder, meaning that the entire case should be remanded for want of subject matter jurisdiction.

However, *Smallwood II* does not apply here because the limitations showing made as to the resident defendants does not equally and necessarily compel dismissal of all claims against all diverse defendants. Appellants underscored at oral argument that their claims against the diverse corporate defendants were

---

826 So. 2d 719, 726 (Miss. 2002) ("In Mississippi, a person is charged with knowing the contents of any document that he executes."). *See also Washington Mut. Finance Group v. Bailey*, 364 F.3d 260, 264-266 (5th Cir. 2004) (same); *Ross v. Citifinancial*, 344 F.3d 458 (5th Cir. 2003) (same). Accordingly, the exception to the statute of limitations found in section 15-1-67 does not apply.

Appellants also contend that the statute of limitations ought to be equitably tolled because of a purported fiduciary relationship between them and the appellees. This too fails, however, for similar reasons because Mississippi law will not equitably toll a statute of limitations unless the untimely plaintiff establishes that he exercised due diligence. *Russell v. Williford*, — So. 2d —, 2004 Miss. App. LEXIS 1111, *7-*8 (Miss. 2004). *See also Ross*, 344 F.3d at 466-67.

16

not simply premised on vicarious liability for the tortious acts

of the three non-diverse individual appellees working for First

Family.[12]  However, in properly conceding that at least some of

_____

[12]  For example, the removed state court amended complaint
alleges, *inter alia*:

> "The Defendants herein are sued individually and as co-
> conspirators, aiders and abettors.  The liability of
> the Defendants arises from the fact that, directly and
> through their agents, employees, instrumentalities, and
> alter egos, they engaged in all or part of the unlawful
> acts, plans, schemes, or transactions complained of
> herein.  Each of the Defendants is jointly and
> severally liable for the damages caused to Plaintiffs.
> Each of the Defendants (and/or their agents)
> substantially participated or assisted in the
> wrongdoing complained of herein and had knowledge of
> the false and misleading statements and deceptive
> activities and other wrongdoing alleged herein or
> recklessly disregarded such wrongful conduct.
>
> . . .
>
> Defendants acted in conspiracy, in concert, and/or
> agency capacity with each other in connection with the
> claims alleged herein.  The Associates controlled and
> directed the wrongful conduct of First Family as
> alleged herein.  Defendants are jointly and severally
> liable for the wrongful conduct alleged herein.
>
> . . .
>
> This action seeks redress for damages sustained by
> Plaintiffs resulting from a habit, pattern and practice
> of predatory lending by these Defendants, to include,
> but not limited to, fraud, deceit, insurance packing
> and equity skimming.  In short, the Defendants strip,
> flip and pack their way to profit at the expense of
> trusting and unknowing consumers . . .
>
> . . .
>
> In designing, marketing and implementing this
> intentional course of calculated conduct, the

17

their claims against the non-resident defendants are analytically distinct from and in addition to their *respondeat superior* claims against those defendants based on the wrongs allegedly committed by the resident defendants, appellants have conceded that the failure of their claims against the resident defendants does not in and of itself cause those of the claims against the non-resident defendants which are *not* based on *respondeat superior* liability for the wrongs committed by the resident defendants to fail as well.

Appellants have urged that limitations was tolled by the pendency of a class action filed in 1997 in the United States District Court for the District of Arizona in which the named defendants included Associates First Capital Corporation and Associates Corporation of North America, which are two of the

---

Defendants targeted counties in Mississippi which are generally all too often populated by lower income people and of those with limited educations because of withheld opportunities.

. . .

The Defendants created and trained its employees to use budget proposals and similar solicitation tools, to compare the customer's current debts with one or more of the Defendants' loan proposals and to demonstrate the 'benefits' of consolidating the consumer's debts with the Defendants' loan . . . ."

18

diverse defendants herein.[13]  However, *none* of the resident

defendants in the present suit were defendants in the Arizona

suit (and appellants have never alleged that any of them were),

so it is facially obvious that the pendency of the Arizona suit

could not toll limitations as to any of the resident

defendants.[14]  The tolling issue, however, cannot be resolved on

that basis as to the diverse defendants because at least two of

them were named defendants in the Arizona suit, and the other

diverse defendants are alleged to have some form of successor or

derivative or alter ego liability respecting the two who were

defendants in the Arizona suit.[15]  Accordingly, at least for this

---

[13]  Plaintiffs also allege that a subsequent settlement
released all claims of the class in the Arizona case against all
the corporate defendants (who constitute all the diverse
defendants) in this case.  And, plaintiffs further contend in
this case that Citigroup Inc., Citifinancial Corporation and
Citifinancial Inc. have, by merger or other acquisition or "alter
ego," in some way succeeded to the liability of Associates First
Capital Corporation and Associates Corporation of North America.
There are no similar allegations as to any of the resident
defendants.

[14] Indeed, at oral argument appellants admitted that their
claim of tolling by virtue of the Arizona suit was inapplicable
to the resident defendants.

[15] While the Arizona suit tolling claim is ultimately
unavailing as to the diverse defendants for the reasons stated
below in part III hereof, that is *not* because they were *not*
*defendants in the Arizona action* (as at least two non-resident
defendants here were defendants there and the other three non-
resident defendants allegedly have some form of successor or
alter ego liability respecting the two that were defendants in
Arizona), which is the reason that it is unavailing as to the
resident defendants here.

reason, the showing that limitations bars the suit against all the resident defendants does not (as *Smallwood II* requires for its "common defense" doctrine to apply) "equally" and "necessarily" "compel" the conclusion that limitations bars the entire suit against "all" the non-resident defendants.

Therefore, though both the non-diverse and diverse appellees successfully asserted a defense based on the same residual statute of limitations, this was not a "common defense" in the particularized sense meant by *Smallwood II*.

Given that there is no reasonable possibility of recovery against the non-diverse appellees and given that *Smallwood II* does not apply, joinder of the non-diverse appellees was improper under *Travis*. *See, e.g., McDonal*, *supra*. The district court, therefore, had, and we too have, subject matter jurisdiction over this case under section 1332.

### III.

Having determined that subject matter jurisdiction exists, we turn finally to the district court's decision to grant summary judgment to appellees. We review a grant of summary judgment *de novo* under the same standard applied by the district court. *Mowbray v. Cameron County, Tex.*, 274 F.3d 269, 278 (5th Cir. 2001).

For the purposes of their argument against summary judgment, appellants implicitly concede that their claims are untimely

20

under Mississippi's residual statute of limitations.  They argue, however, that the clock was tolled by (1) the appellees' fraudulent concealment of the facts giving rise to this suit, and, (2) that the commencement of a class action lawsuit in Arizona in 1997 tolled limitations as to the non-resident defendants.

For the reasons discussed above, *supra* § II.C n. 11, appellants' contention that the limitations clock was tolled by the fraudulent concealment of the appellees is without merit.

Their contention that the statute of limitations was tolled as to the diverse defendants by the Arizona class action is also without merit.  There is no showing that the putative class action in Arizona ever embraced claims under Mississippi statutory or common law or that appellants were ever members of the putative class in that suit.[16]

Moreover, Mississippi does not have class actions and we are cited to no Mississippi court decision applying class action tolling to a Mississippi law cause of action allegedly barred by a Mississippi statute of limitations.

---

[16] The class ultimately certified in the Arizona case consisted of "residents of the State of Arizona" sold credit life insurance "in connection with any real estate loan made by Defendants" when the insurance "will not pay off the loan in the event of their death during the term of coverage." *Seimer Assoc. First Capital Corp*., 2001 U.S. Dist. LEXIS 12810, *18 (D. Ariz. March 30, 2001).  Appellants are not Arizona residents and none of the loans to appellants here complained of are real estate loans.

The cases cited by appellants, such as *American Pipe and Constr. Co. v. Utah*, 94 S.Ct. 756 (1974), and *Crown, Cork & Seal Co., Inc. v. Parker*, 103 S.Ct. 2392, 2397-98 (1983), all involve a federal class action for violation of a federal statute tolling, until class certification is denied or limited so as to exclude the party claiming tolling, the running of the statute of limitations, on an action, within the scope of the putative class action, for violation of the same federal statute by a member of the putative class against a defendant in the class action.

The only case appellants have cited involving Mississippi law is *Piney Woods Country Life School v. Shell Oil Co.*, 170 F. Supp. 2d 675 (S.D. Miss. 1999). That was a class action by royalty owners brought in United States District Court for the Southern District of Mississippi complaining of how the defendant Shell Oil Company accounted to royalty owners for gas produced in Mississippi and run through Shell's Thomasville, Mississippi, plant. Royalty owners within the scope of that putative class but who were excluded by the 1978 class certification order which limited the class to those whose claims by then exceeded $10,000, moved after 1984 to be added back to the class. The district court denied the motion on the basis that the movants' claims were barred by limitations, and that class action tolling did not save the movants' claims because, though they and their claims were within the putative class action as filed, any tolling did

22

not extend beyond 1978 when they were excluded from the class by the 1978 class certification order, and that the Mississippi limitations statute had run since then and before their motion. While the opinion does discuss *American Pipe* and *Crown, Cork & Seal*, it does not cite any Mississippi court opinions. *Piney Woods* – even if it purported to apply Mississippi law – is clearly distinguishable. The parties claiming tolling were indisputably members of the putative class seeking to recover on the identical cause of action by intervening in the allegedly tolling class action. Here an Arizona class action is the basis for the claimed tolling, and it is not shown that the Mississippi law claims asserted here were embraced within that Arizona case or that appellants were members of the putative class there. No opinion of a Mississippi court, or purporting to apply Mississippi law, is cited in support of appellants' tolling claims.

We conclude that appellants have adduced no summary judgment evidence which would support a finding that the Mississippi statute of limitations as to their Mississippi law claims was tolled by the pendency of the Arizona class action suit.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

23