REVISED July 14, 2017

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2017

Lyle W. Cayce
Clerk

No. 16-20578

MICHAEL A. CARR; GREGORY KATHAN; PERRY MEIER; KELLY L'ROY; CHARLES MULHALL; SCOTT MUND,

> Plaintiffs - Appellants

v.

AIR LINE PILOTS ASSOCIATION, INTERNATIONAL,

> Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-451

Before STEWART, Chief Judge, and WIENER and PRADO, Circuit Judges.

PER CURIAM:*

Plaintiffs-Appellants, Michael Carr, Gregory Kathan, Perry Meier, Kelly L'Roy, Charles Mulhall, and Scott Mund ("Appellants"), formerly pilots for Continental Airlines ("Continental") but now pilots for United Airlines ("United"), sued their collective bargaining agent, Defendant-Appellee Air Line

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20578

Pilots Association International ("ALPA"), on behalf of themselves and all former Continental pilots. Appellants alleged that ALPA breached the duty of fair representation by interfering with the process of creating an integrated pilot seniority list ("seniority list") for all pilots of the two merging airlines, Continental and United Airlines. The district court granted ALPA's motion for a summary judgment and dismissed the Appellants' suit. We affirm.

I.

FACTS AND PROCEEDINGS

**A.    Factual Background**

In 2010, United and Continental merged, operating thereafter as United. ALPA represented the pilots of both airlines as their collective bargaining agent before and during the merger.

ALPA had a preexisting Merger Policy which required it to "provide the process" when two airlines whose pilots it represented merged. That process included the integration of the two seniority lists into one. ALPA's representation structure before and during this merger included Master Executive Councils ("MECs") elected to represent each airline's pilot group. ALPA's role during a merger is limited to providing the Merger Policy and facilitating the merger in accordance with that policy. In this case, each MEC appointed a three-member "Merger Committee" to create the seniority list. Pursuant to ALPA's Merger Policy, the Merger Committees had "complete and full authority" to negotiate and, if necessary, arbitrate a "fair and equitable" and "final and binding" seniority list. ALPA Merger Policy permitted the MECs and Merger Committees to "fashion their own process" for integrating the seniority lists, while observing specified "fundamental requirements."

2

No. 16-20578

Ultimately, the MECs and Merger Committees were unable to agree on a seniority list. ALPA's Merger Policy specifies that if the pilots are unable to agree on a seniority list, arbitrators would merge the existing lists. The Merger Committees voluntarily agreed to select the arbitrators from a list proffered by ALPA.

During the course of the arbitration, two discovery disputes arose, and the Merger Committees chose a separate arbitrator to referee those two disputes. First, Continental requested that United provide specific W-2 data showing each pilot's earnings for a period. The discovery arbitrator ruled that Continental could discover earnings information from the W-2s, subject to confidentiality procedures designed to prevent disclosure of the pilots' seniority numbers. Second, the arbitrator granted United's request for Continental pilots' defined-benefit plan records and did not subject that request to any restrictions, even though he acknowledged that the parties had agreed to protect the confidentiality of the information with respect to those records.

Following 16 days of hearings, during which both sides submitted extensive testimony, expert witness reports, and documents, each side presented its proposal for integrating the seniority lists. The arbitrators subsequently issued an award that integrated the seniority lists into one list. The arbitrators included a thorough explanation of how they incorporated the factors required by the ALPA Merger Policy. The arbitrators rejected various parts of Continental's and United's proposals in coming up with the seniority list. Thereafter, United implemented that list, and the combined groups of pilots have been working under it ever since.

No. 16-20578

## B.    Procedural Background

Appellants filed the instant complaint, alleging that ALPA breached its duty of fair representation by acting in bad faith. Appellants requested that the court vacate the arbitration award and order ALPA to start a new seniority list integration process.

ALPA filed a motion to dismiss on the pleadings. The district court denied that motion and converted it to a motion for summary judgment, allowing "tailored discovery" on the issue of ALPA's alleged breach. ALPA renewed its motion for summary judgment following preliminary discovery. The court granted that motion and Appellants timely appealed.

## II.

### STANDARD OF REVIEW

"We review a grant of summary judgment de novo under the same standard applied by the district court."[1]  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]  We consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.[3]

"Once a movant who does not have the burden of proof at trial makes a properly supported motion" for summary judgment, "the burden shifts to the nonmovant to show that [the motion] should not be granted."[4]  To do so, the nonmovant must "identify specific evidence in the record and . . . articulate the

---

[1] *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392–93 (5th Cir. 2005).

[2] FED. R. CIV. P. 56(a).

[3] *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).

[4] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

No. 16-20578

precise manner in which that evidence supports his or her claim."[5]  Neither we nor the district court have a duty to "sift through the record in search of evidence to support" the nonmovant's opposition to summary judgment.[6]

### III.

### ANALYSIS

### A. Breach of the Duty of Fair Representation

#### 1. Applicable Law

The duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."[7] The fact that a union decided a dispute in a way that favored one group's interests over another is not sufficient to show a breach of that duty.[8]

Unions have broad discretion in resolving internal disputes, and their actions are judged by a "wide range of reasonableness."[9] A breach of fair duty occurs only when the union's conduct is "arbitrary, discriminatory, or in bad faith."[10] Here, Appellants allege only bad faith.

Bad faith occurs when a union acts with a "motive to harm" a particular group, and turns on the subjective motivation of the union officials.[11] Bad faith

---

[5] *Id.*; *accord RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[6] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

[7] *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1201 (5th Cir. 1991) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)).

[8] *Id.*

[9] *Id.* at 1204 (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953)).

[10] *Id.* (quoting *Vaca*, 386 U.S. at 190).

[11] *Id.* at 1204.

No. 16-20578

is a "demanding standard" met only by "sufficiently egregious" union action.[12] To prove that ALPA violated its duty to fairly represent all members by acting in bad faith, Appellants must show that the union acted intentionally to harm them by "seriously undermin[ing] the integrity of the arbitral process."[13] Even if a member shows that his union breached its duty, he must also show that the breach "contributed to the erroneous outcome of the . . . proceedings."[14]

*2. Analysis*

Appellants allege that underlying ALPA's bad faith was its preference for United pilots.[15] We address Appellants' supporting contentions in turn.

a.  Richard Harwood's Participation

Appellants assert that ALPA acted in bad faith by not barring – and allegedly encouraging – the participation of Delta Airlines pilot Richard Harwood ("Harwood") in the merger proceedings.  Harwood was hired by the United Merger Committee as a consultant and testified in the arbitration proceeding on the longevity factor. Then, after the hearings ended, Harwood worked as a member of the arbitration panel's technical assistance team. That team consisted of technical experts designated by both Merger Committees to help the panel members obtain data required to generate the seniority list.

Appellants focus on the fact that ALPA rules state that an MEC is prohibited from hiring "active member pilots" as consultants and that Harwood

---

[12] *Id.* at 1203 (quoting *Alicea v. Suffield Poultry Inc.*, 902 F.2d 125, 130-31 (1st Cir. 1990)).

[13] *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976).

[14] *Id.* at 568.

[15] After the two airlines merged, the United pilots were in the majority and could vote to decertify ALPA as its collective bargaining agent. This would significantly decrease ALPA's membership and thus membership dues it would receive.

was an active member pilot. However, a separate ALPA rule in the Merger Policy gives the Merger Committees "complete and full authority" to act on behalf of the pilots they represent. That authority would include the hiring and paying of consultants of its choice, thereby making Harwood's participation completely consistent with ALPA policy. It is unclear how these provisions are meant to interact, but a union's interpretation of its own governing documents is entitled to deference unless the interpretation is "patently unreasonable,"[16] which ALPA's interpretation is not. The Merger Policy vests broad discretion in the Merger Committees to create seniority lists, and the provisions of ALPA policy that prohibit active member pilots from consulting specifically limits this prohibition to MECs: It does not apply to Merger Committees.

Appellants also allege that ALPA encouraged – or at least did not discourage – Harwood's participation in the arbitration process. However, it was the United Merger Committee, not ALPA, that had the authority to hire Harwood as a consultant and did so. Appellants adduced no evidence to show that bad faith motivated ALPA's decision not to prevent Harwood's participation.

Appellants further claim that they were misinformed as to the nature of Harwood's participation in the arbitration proceedings. They claim that they were led to believe that Harwood would work only in a technical capacity, yet he also testified on longevity. Appellants did not object to Harwood's testimony or service at any point during the arbitration. Moreover, the arbitrators had

---

[16] *O'Neill*, 939 F.2d at 1206 (quoting *Newell v. Int'l Bhd. of Elec. Workers*, 789 F.2d 1186, 1189 (5th Cir. 1986)).

full authority to exclude Harwood if they believed that his testimony was inappropriate or that he lacked credibility, but they did not do so.

Appellants finally insist that ALPA violated its policy by paying Harwood. ALPA policy provides that "ALPA shall not, under any circumstances, pay any legal or consulting fees incurred by pilot groups involved in merger activity between any two ALPA represented carriers." Rather, such fees must be paid from a fund maintained by the MEC, and ALPA's annual report for 2012 reflected a payment to Harwood. However, the record clearly shows that checks to Harwood were drawn on United's Merger Assessment Fund, strictly in accordance with ALPA policy: ALPA insists that the inclusion of this payment on the 2012 annual report was a mistake. Thus, Harwood's participation, testimony, and payment does not constitute a breach of the duty of fair representation by ALPA.

b. Discovery Disputes

Under its Merger Policy, ALPA was required to obtain discoverable records from both United and Continental and to provide those records to the pilot groups during arbitration. Appellants contend that ALPA helped United win discovery disputes. This claim relates to the arbitrator's denial of Continental's request for United pilots' W-2s and the arbitrator's grant of United's request for the dates on which Continental pilots joined the airline's defined benefits plan.

Appellants maintain that ALPA's decision to send a representative to the hearing on Continental's request for United pilots' W-2s supports this contention. Appellants allege that inappropriate ex-parte communications took place between the arbitrator and ALPA's representative at the hearing, ultimately leading the arbitrator to deny Continental's request. However, the

record shows that the ALPA representative engaged only in pleasantries with the arbitrator and did not discuss any substantive matters. In addition, the arbitrator's award at least partially favored Continental's position because he concluded that parts of the W-2s were necessary and appropriate. He simply ordered that the request for pay data must be subject to narrow restrictions to address privacy concerns.

On the other hand, ALPA did not send a representative to the hearing on United's discovery request, which was granted. Appellants contend that this too is evidence of bad faith. As stated by the district court, however, "[t]he differences between the discovery sought in each of the two production requests and the limits on the documents produced to protect individual pilot privacy while allowing each side to obtain needed information, are amply demonstrated in the record." ALPA's duty to facilitate and obtain discovery between the parties is not as sensitive when requesting for the date a defined benefits plan started as it is when requesting specific pilot income and tax information from a pilot's W-2. Appellants have adduced no evidence that ALPA acted with bad faith regarding the discovery disputes.

### c. Ex Parte Communications

Appellants also assert that ALPA's director of representation, Bruce York, engaged in ex parte communications with one of the arbitrators. These communications include: (1) an email from York to the arbitrator stating "we'll soon see all three photos on the wall in the U.S. Post Office," (2) an email from the arbitrator to York stating "Will call you when I can give you a progress report on how things are going," (3) a statement by the arbitrator to York that the panel was on schedule to issue the award and that he had "more later" to say, and (4) a statement by the arbitrator two days before the award was issued

that "one of these days I'll tell you some stories." Such utterances might be unprofessional, but Appellants adduced no evidence to support their claim that ALPA was acting in bad faith with regard to these statements. Appellants only speculate that there is an underlying scheme in which the arbitrators are concerned about political consequences for ALPA because they want to continue to serve as ALPA arbitrators in future disputes. As Appellants fail to make a connection between these statements and bad faith on the part of ALPA, they do not meet the standard necessary to avoid summary judgment.

Appellants have also failed entirely to show that any of ALPA's conduct "contributed to the erroneous outcome of the . . . proceedings."[17] The seniority list created by the arbitrators contains a full explanation of the factors that were considered in creating that list, including all of the factors that were required by the ALPA Merger Policy. The panel's seniority list is supported by ample evidence and by testimony that the way in which the arbitrators considered various factors to create the list is the best approach. Appellants have raised no material fact issue that any alleged breach of the duty of fair representation on the part of ALPA affected the arbitrator's award in any way. The district court did not err in granting ALPA's motion for summary judgment.

## B. The District Court's Focus on Fairness Versus Bad Faith

Appellants also contend that the district court erred by improperly focusing on the establishment of "a fair process for determining seniority" in the creation of a seniority list which, they argue, is to be limited to cases in which there is an alleged to be breach of the duty of fair representation through

---

[17] *Hines*, 424 .S. at 568.

No. 16-20578

discrimination. The district court did discuss fairness in its opinion, but Appellants are completely wrong in asserting that the court did not adequately analyze ALPA's conduct in light of the allegation of bad faith. To the contrary, the court's opinion is replete with analyses of bad faith.

IV.

CONCLUSION

We AFFIRM the district court's judgment dismissing Appellants' action with prejudice.