# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-40259
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2018

Lyle W. Cayce
Clerk

GEORGE W. DAVIS, IV,

      Plaintiff - Appellant

v.

UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING,
ENERGY, ALLIED, INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, LOCAL NUMBER 13-423,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:16-CV-213

Before DENNIS, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

      George Davis worked as a dockman for Motiva Enterprises, LLC
(Motiva), a fuel refiner and distributor but was terminated for violating one of
the company's "Life-Saving Rules" after he used his cellphone on the dock
without a permit. During Davis's employment at Motiva, he was represented

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 18-40259

by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local number 13-423 (the Union).  Davis sued the Union when it failed to arbitrate his grievance against Motiva, alleging that the Union had breached its duty of fair representation.  The district court granted the Union's motion for summary judgment.  We affirm.

## I

Davis was employed by Motiva for seven years and was represented by the Union.  Dues were taken automatically from his paycheck.  A collective bargaining agreement (the CBA) was in place between the Union and Motiva when Davis was terminated, and it provided that Motiva had the right to discharge employees "for proper cause."  The CBA set forth a grievance procedure through which an employee or the Union could file a grievance in the event that Motiva violated the CBA.  The grievance procedure included an arbitration process through which an employee or the Union could appeal to a Board of Review consisting of three members: one selected by Motiva, one by the complainant, and a third neutral arbitrator.  Under the CBA, if a formal hearing was not held before a Board of Review within two years of the receipt of the grievance, "[a]ny grievance . . . shall be null and void."

On January 13, 2014, Davis was working as a dockman at Berth 7, pumping lube oil into barges when he was observed using his cellphone, allegedly in violation of one of Motiva's Life-Saving Rules.  Two days later, Motiva held an HR meeting with Davis regarding his cellphone use, at which Troy Barbay, the then-Chairman of the Union Workman's Committee was present.  Motiva terminated Davis on January 23, 2014, citing his violation of the Life-Saving Rule.

On January 27, 2014, Troy Barbay filed a grievance with Motiva on Davis's behalf.  In addition to asking that Motiva reinstate Davis, the Union

also demanded that Motiva cease and desist from violating the CBA, that Davis receive proper compensation, including benefits and overtime, and that Davis generally be made whole.

The Union began investigating the merits of the grievance. Immediately following Davis's termination, Barbay asked him to write a statement of events to assist the Union. Davis did not do so. The Union sent four requests to Motiva over the next year asking for information, documents, and records pertaining to its decision to terminate Davis. As part of this initial investigation, the Union received a video from Motiva showing Davis using his cellphone while at Berth 7. At that point, the Union began to have reservations regarding the grievance. The Union again asked Davis to provide his account of the events, but no information was provided at that time.

On February 17, 2014, Motiva denied Davis's grievance. On March 11, 2014, the Union was notified that Davis had secured outside counsel Stephen Webb. This was the first time that Union representatives knew of an employee hiring outside counsel during a grievance process. Unsure of how to proceed, the Union decided that all future communication with Davis would go through Webb. On March 19, 2014, the Union appealed the grievance, invoking the Board of Review process under the CBA. Although the Union's appeal was not timely, Motiva did not object and agreed to select the third member of the Board of Review, under the terms of the CBA.

On April 16, 2014, Barbay requested for the third time that Davis provide the Union with a written version of events and received no response. In June, Barbay, the Union's attorney, and the Union's International Union Staff Representative met with Davis and Webb. At this meeting Davis said that he had not been texting but had been using the notepad application on his phone. The Union requested that Davis provide his cellphone records to corroborate his version of events. Davis declined to provide the records,

claiming that they were no longer available from the cell provider. One week after the meeting, Webb sent the Union a letter detailing Davis's version of events while he was working at Berth 7. In the letter, Webb reiterated that Davis had not been texting on January 13 while at Berth 7, and the surveillance video only showed Davis inputting loading times into the notepad function.

While the Union was still investigating the grievance, Davis filed a Title VII action against Motiva in the United States District Court for the Eastern District of Texas.[1] Ultimately, the district court granted Motiva's motion for summary judgment and we affirmed.[2] While the Title VII case was pending, the Union made several requests to settle the grievance through mediation, which Motiva denied. Although the Union had invoked the arbitration procedures under the CBA, it chose to postpone arbitration for fear of harming Davis's Title VII case, believing that losing the arbitration could adversely affect Davis's chances in federal court.

During this time, Webb and Davis expressed concerned to the Union about the approaching two-year deadline for arbitrating the grievance. In December 2015, Davis spoke to Jeremy Walker, who had replaced Barbay as the Union's Worker's Committee Chair, about the approaching deadline. Walker said that, based on past experiences with Motiva, he believed the deadline would be treated with flexibility and would also be extended by 30 days to account for time that the Union was on strike. After this conversation with Davis, Walker spoke to Motiva's Human Resources Manager, Lee Poulter, about extending the two-year deadline. Poulter said that he would need

---

[1] *Davis v. Motiva Enters., LLC*, No. 1:14-CV-480, 2016 WL 8677183 (E.D. Tex. Sept. 2, 2016).

[2] *Id.* at *1, *aff'd,* 692 F. Appx. 190 (5th Cir. 2017) (per curiam).

No. 18-40259

Motiva's attorney, Robert Hambright, Webb, and the Union's attorney to all agree to an extension of the deadline.

On January 4, 2016, before a decision was made regarding the deadline and while the Title VII case was still pending, Webb provided the Union with Davis's deposition testimony in the federal court case. In his deposition, Davis admitted to texting on his cell phone at Berth 7, which directly contradicted statements he had made to the Union during its investigation. After reviewing the deposition testimony and considering other testimony and information from its investigation, the Union decided that Davis's grievance would be unlikely to succeed and chose not to pursue arbitration before the Board of Review.

In May 2016 Davis filed a complaint against the Union in the 136th District Court of Jefferson County, Texas. The Union removed the case to the United States District Court for the Eastern District of Texas. Davis raised two claims: the first alleged that the Union had violated its duty of fair representation. The second was a breach of contract claim asserting that Davis was a third-party beneficiary of the contract between Motiva and the Union, and that the Union had breached that contract by failing to arbitrate timely under the terms of the CBA. The Union moved for summary judgment on both claims. The district court granted the Union's motion for summary judgment on the merits of Davis's claims but denied the motion to the extent that the Union requested attorney's fees. Davis appeals the grant of summary judgment on the breach of the duty of fair representation claim. He has not raised the breach of contract claim on appeal.[3]

---

[3] See *In re Southmark Corp.*, 163 F.3d 925, 934 n. 12 (5th Cir. 1999). *See also United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (citing *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993)).

No. 18-40259

## II

The National Labor Relations Act (NLRA) governs "federal labor-relations law."[4]  Under the NLRA, union representatives selected for collective bargaining by the majority of employees in a unit of a company "shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment."[5]  As part of its statutory authority, the union has "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct."[6]

A union has a legal duty to process a grievance and must either prosecute the grievance or "refuse for adequate reason to do so," such as deciding in good faith that the grievance lacks merit.[7]  However an individual employee does not have an "absolute right to have his grievance taken to arbitration."[8]  Rather, that right will depend on the "applicable collective bargaining agreement" and the merits of the underlying grievance.[9]  A union has considerable discretion in processing grievances and in deciding "whether and how far a grievance should be pursued,"[10] and "their actions are judged by a 'wide range of reasonableness.'"[11]  A union "does not breach its duty of fair representation . . . merely because it settled the grievance short of

---

[4] *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 255 (2009).

[5] 29 U.S.C. § 159(a).

[6] *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

[7] *Bache v. Am. Tel. & Tel.*, 840 F.2d 283, 289 (5th Cir. 1988) (quoting *Hammons v. Adams*, 783 F.2d 597, 602 (5th Cir. 1986)).

[8] *Vaca*, 386 U.S. at 191.

[9] *Id.* at 191-92.

[10] *Bache*, 840 F.2d at 289 (quoting *Hammons*, 783 F.2d at 601).

[11] *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (5th Cir. 2017) (per curiam) (quoting *O'Neill v. Air Line Pilots Ass'n, Int'l*, 939 F.2d 1199, 1204 (5th Cir. 1991), *rev'd on other grounds*, 499 U.S. 65 (1991)).

arbitration."[12]  "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."[13]

Davis alleges that the Union acted arbitrarily and in bad faith.  A union acts arbitrarily "only if [the union's conduct] can be fairly characterized as so far outside a 'wide range of reasonableness' that it is wholly 'irrational' or 'arbitrary.'"[14]  Under this standard, a union is afforded broad discretion to make decisions, even if those decisions are ultimately wrong.[15]  A union's conduct will only be considered arbitrary when it has acted "irrationally," or "without a rational basis or explanation."[16]

"Bad faith occurs when a union acts with a 'motive to harm' . . . and turns on the subjective motivation of the union officials."[17]  This is a "'demanding standard' met only by 'sufficiently egregious' union action."[18]  To demonstrate that a union acted in bad faith, an employee must "show that the union acted intentionally to harm [him] by 'seriously undermin[ing] the integrity of the arbitral process."[19]  Davis accepts that unions have broad discretion in resolving a grievance, but nonetheless insists three instances show that the Union acted arbitrarily or in bad faith.  We review a district court's grant of

---

[12] *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976) (alteration in original) (quoting *Vaca v. Sipes*, 386 U.S. 171, 192 (1967)).

[13] *Vaca v. Sipes*, 386 U.S. at 190.

[14] *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45 (1998) (alteration in original) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)).

[15] *Marquez*, 525 U.S. at 45-46.

[16] *Id.* at 46 (citing *Air Line Pilots*, 499 U.S. at 78-81).

[17] *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 602 (2017) (quoting *O'Neill v. Airline Pilots Ass'n, Int'l*, 939 F.2d 1199, 1203-04 (5th Cir. 1991)).

[18] *Id.*

[19] *Id.* at 602 (second alteration in original) (quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976)).

No. 18-40259

summary judgment de novo, applying the same standards as the district court.[20]

## A

Davis alleges that the Union acted arbitrarily or in bad faith by failing to communicate with him at various times during the investigation. First, he asserts that the Union failed to communicate directly with him. Barbay testified that the Union did handle Davis's grievance somewhat differently by communicating only through Davis's attorney, Webb. Barbay also explained that the Union had never had an employee hire outside counsel for representation during a grievance. We agree with the district court that "[t]his fact would reasonably explain why the Union treated its communications with Davis differently," and such conduct may even be required by attorney rules of professional conduct.[21] Although outside the norm for how the Union typically handles a grievance, the Union's actions were not "so far outside a 'wide range of reasonableness' that [they were] wholly 'irrational' or 'arbitrary.'"[22] Nor has Davis offered any evidence to suggest that the Union's decision to communicate with Webb was intended to harm Davis. If anything, the evidence shows that the Union respected Davis's decision to hire outside counsel.

Second, Davis contends that the Union acted arbitrarily or in bad faith when it failed to communicate with Webb at various points during the investigation. Even if the Union failed to respond to numerous phone calls and written communications from Webb, as Davis claims, this does not rise to the

---

[20] *DePree v. Saunders*, 588 F.3d 282, 286 (5th Cir. 2009) (citing *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 859-60 (5th Cir. 2004)); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 392-93 (5th Cir. 2005).

[21] *See* MODEL RULES OF PROF'L CONDUCT R. 4.2 (AM. BAR ASS'N 2016); TEX. DISCIPLINARY R. OF PROF'L CONDUCT 4.02(a) (TEX. BAR ASS'N 2018).

[22] *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45 (1998) (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991)).

level of arbitrary or bad faith conduct. There is evidence that even though Davis and Webb became frustrated by the Union's lack of response, the Union continued to review material regarding Davis's Title VII case and sent mediation requests to Motiva, indicating that the Union was not neglecting the grievance. The Union's failure to respond to Davis's attorney did not rise to a level that can be considered "wholly irrational" or "arbitrary."[23] Nor has Davis offered any evidence that the Union intended to harm him by not responding at various points during the investigation.

## B

Davis also contends that the Union's decision to delay the arbitration of the grievance while Davis's suit with Motiva was pending evidenced bad faith and arbitrary action.

We agree with the district court that the Union's decision to postpone arbitration was not evidence that it was arbitrary or in bad faith. The Union offered evidence that it "believed that a loss at arbitration would certainly adversely impact [Davis's] Title VII case" and that it held a good-faith belief that Motiva would be flexible with regard to the arbitration deadline. Motiva had exhibited flexibility with regard to the deadline for invoking the Board of Review process. The district court held that "the Union's reliance on [Motiva's] history of freely granting extensions and flexibility with deadlines is insufficient to establish arbitrariness or bad faith."

Even without its reliance on Motiva's prior flexibility regarding grievance deadlines, the Union had a reason to believe in good-faith that pressing forward with arbitration could harm Davis's Title VII suit. Instead, the Union pursued mediation with Motiva. In addition, the Union received

---

[23] *Id.*

No. 18-40259

Davis's contradictory deposition testimony approximately two weeks before the two-year hearing deadline.

## C

Davis alleges that the Union's assessment of the merits of Davis's grievance was pretextual. To establish bad faith or arbitrary conduct, Davis must show something more than a failure to pursue his grievance through arbitration. A union "does not breach its duty of fair representation" just because it "settle[s] [a] grievance short of arbitration."[24] Davis must show that the Union acted in an "egregious" or "irrational" manner. Viewing the evidence in a light most favorable to Davis, he fails to meet the high bar required to demonstrate that the Union acted arbitrarily or in bad faith.

The Union spent considerable time and effort investigating Davis's grievance. The Union was quick to file a grievance after Davis was terminated and spent the following year requesting documents and evidence from Motiva. The Union also attempted to obtain Davis's version of events and held a meeting with Davis and his outside counsel. Ultimately, however, in light of Davis's unwillingness to cooperate and his conflicting statements regarding his cell phone use, the Union concluded that the grievance was unlikely to succeed and did not merit the time and money required to pursue arbitration. Davis asserts that the district court could not rely on his conflicting testimony and attempts to distinguish the deposition questioning in which he admitted to texting on his cellphone from the questioning by the union in which he denied texting at Berth 7. However, the Union's view that such discrepancies would likely result in a loss at arbitration was not irrational. There is no evidence that the decision not to arbitrate fell outside the Union's broad discretion or

---

[24] *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567 (1976) (quoting *Vaca v. Sipes*, 386 U.S. 171, 192 (1967)).

No. 18-40259

was arbitrary. Nor has Davis shown that the Union acted with the intent to harm him. Rather, the Union investigated the grievance for over two years and made several requests to Motiva to mediate before ultimately concluding that the grievance would not succeed.

The district court properly held that the Union did not breach its duty of fair representation by acting arbitrarily or in bad faith. Viewing the summary judgment evidence in the light most favorable to Davis, he has failed to raise a genuine issue of material fact.[25]

*          *          *

We AFFIRM the district court's judgment.

---

[25] *See Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014) (explaining in the summary judgment context that courts are to consider the evidence "'in a light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party'") (quoting *Frakes v. Crete Carrier Corp.*, 579 F.3d 426, 429-30 (5th Cir. 2009); FED. R. CIV. P. 56(c) (same); FED. R. CIV. P. 56(a) (providing that summary judgment is appropriate when the movant has shown "no genuine dispute as to any material fact" exists and he "is entitled to judgment as a matter of law").