# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2025

Lyle W. Cayce
Clerk

No. 24-40815

———————

Lauralee Richmond,

*Plaintiff—Appellant*,

*versus*

Team One Contract Services, L.L.C., *doing business as* TeamOne Logistics,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:22-CV-282

———————————————————

Before Wiener, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Defendant-Appellee Team One Contract Services, L.L.C. ("TeamOne") fired Plaintiff-Appellant Lauralee Richmond while she was seven months pregnant. She subsequently filed suit, alleging pregnancy discrimination under Title VII of the Civil Rights Act of 1964. TeamOne insisted that her termination stemmed from poor performance—not

————————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-40815

pregnancy. The district court granted summary judgment to TeamOne because Richmond failed to rebut TeamOne's legitimate, non-discriminatory reason for termination. We AFFIRM.

## I.

Richmond began working for TeamOne in 2019 as an Operations Manager at the company's Freeport, Texas location. TeamOne had a contract with UPS Logistics and was responsible for hiring and managing truck drivers for a UPS client's Freeport facility. For her part, Richmon directly managed and supervised a fleet of truck drivers and support staff.

One of Richmond's primary responsibilities was ensuring compliance with safety protocol. She was tasked with conducting weekly driver observations and monthly "Comprehensive Health and Safety Process" meetings, as well as participating in weekly "Safety Action Plan" and quarterly safety meetings with TeamOne's corporate Safety Department. She was also required to submit safety meeting and observation reports—using specific forms—to the UPS National Account Manager.

In early 2020, TeamOne started tracking drivers' "hard brakes."[1] Richmond was then tasked with reviewing weekly hard-brake reports, coaching drivers with multiple hard brakes in one week, and documenting that coaching session. If a driver had frequent hard brakes throughout the month, Richmond would conduct "face-to-face counseling" and give a "re-training session." This session would be documented in the driver's personnel file.

---

[1] Neither TeamOne nor Richmond define a "hard brake."

Richmond later notified TeamOne's Human Resources Generalist that she was pregnant and told the Vice President of Human Resources that she would "be out for 12-15 weeks" on maternity leave.

Complaints against Richmond piled up over subsequent months. For example, the UPS Division Driver Trainer complained about her responsiveness. Richmond had allegedly proven unwilling to coordinate a hard-brake counseling and re-training session, and she had not responded to his plea for help in training drivers with multiple hours-of-service violations. TeamOne's Director of Safety and Compliance complained that "not one single coaching document or discipline document has been turned in"— despite requesting for months that Richmond submit them.

On this score, TeamOne disciplined Richmond. The company had "been tracking hard brakes since May and as of [November 20, 2020] [had] not received a single coaching document." A "total of 65 counseling documents" were missing. Richmond was told to submit all missing documentation within a few days.

In response, Richmond insisted that she knew better—TeamOne's "disciplinary approach to documentation" did not work, and she had "the number one ranked terminal in UPS." She added that she would either need to "perjure [her]self by forging documentation" or "continue to raise objection" against TeamOne's documentation policy. She then reminded the company that she was pregnant and would take leave. At this point, she rejected the Vice President of Human Resources's alleged suggestion that she work from home after delivering the baby.

More complaints piled up in following weeks—these perhaps more serious than before. The UPS Division Driver Trainer highlighted the number of hours-of-service violations at Richmond's site. He also flagged inaccurate driver logs: "If these log violation[s] were discovered in a

[Department of Transportation] audit or during inspection," UPS would be hit with 51 Compliance, Safety, and Accountability points.

By early March 2021, TeamOne began preparing for Richmond to take maternity leave by training other employees to cover her workload. At that point, TeamOne's Transportation Supervisor revealed that Richmond (1) never conducted monthly Comprehensive Health and Safety Process meetings, (2) asked a TeamOne employee to falsely pay a driver, (3) was rarely in the office, and more.

Richmond was fired a few days later. Cited reasons include "falsifying safety documents regarding driver observations and failing to follow paperwork protocol surrounding driver observations and safety meeting[s]." She was seven months pregnant.

This pregnancy discrimination suit followed. The district court granted summary judgment to TeamOne, because Richmond could not establish that TeamOne's cited reasons for termination were pretextual. Richmond appealed.

## II.

Richmond now contends that the district court should not have granted summary judgment against her because there remain genuine factual disputes for trial. More specifically, she insists that she presented enough evidence to show that TeamOne's cited reasons for termination may have been pretextual. We review this argument de novo. *See Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020).

## A.

Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Richmond can overcome summary judgment by

presenting specific evidence that supports each element of her pregnancy discrimination claim. *See, e.g.*, *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986); *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam). We view that evidence in the light most favorable to her. *See Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021).

In relevant part, Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended Title VII's definition of the phrase "because of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). Claims brought under this Act are analyzed like any other Title VII discrimination claim. *See Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

Richmond bases her pregnancy discrimination claim on circumstantial evidence, so the *McDonnell Douglas* framework applies. *See id.* In effect, she must first "create a presumption of discrimination by making out a prima facie case of discrimination." *Id.* The burden then shifts to TeamOne to "produce a legitimate, nondiscriminatory reason for her termination." *Id.* Richmond then bears "the ultimate burden" of persuading the fact finder that TeamOne "intentionally discriminated against her" because of her pregnancy. *Id.*

## B.

We need not determine whether Richmond made out a prima facie discrimination case. Even if she did, she does not dispute that TeamOne cited "a legitimate, non-discriminatory reason for discharge." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002). And she has not

presented sufficient evidence for a jury to conclude that TeamOne was motivated by discriminatory animus.

Richmond offers five reasons why we should not believe TeamOne's cited reason. None are persuasive.

First, she claims to have taken her site's safety operation "from the outhouse to the penthouse," improving its safety rankings from last to first place. This implies, we suppose, that she did not perform poorly.

Yet the ends do not always justify the means. The record reveals that Richmond rebuked TeamOne's safety protocol in several ways—failing to address hours-of-service violations, not conducting weekly Comprehensive Health and Safety Process meetings, falsifying driver logs, and more. TeamOne also had ample financial incentive to ensure careful compliance with its protocol. It is unsurprising, then, that TeamOne placed particular value on process—not merely outcome.

Second, Richmond insists that some of the complaints against her are untrue.

But she misses the point. The issue is not whether these complaints were true—it is whether TeamOne "reasonably believed" them and "acted on [them] in good faith." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010) (citation omitted). To this, Richmond gives no response.

Third, Richmond argues that TeamOne is "shifting explanations" for her termination. It relied at summary judgment on complaints filed by the UPS Division Driver Trainer, she notes. But it had not cited those complaints when she was terminated.

She is splitting hairs. True, TeamOne did not specifically mention the complaints filed by the Trainer when it ended her employment. But it did

explicitly fire her for "falsifying safety documents," among other things. And the Trainer reported "falsifi[ed]" driver logs.

At any rate, TeamOne need not rely on complaints filed by the UPS Division Driver Trainer at all. Other complaints allege similar conduct, and Richmond never explains why it was unreasonable for TeamOne to believe them or how they relied on those complaints in bad faith. *See Jackson*, 602 F.3d at 379.

Fourth, Richmond claims that TeamOne's Vice President of Human Resources "harbored discriminatory animus" against her and influenced TeamOne's termination decision. She points out, for example, that he often did not respond to her emails about maternity leave. The two also allegedly disagreed about whether she should work from home after delivering the baby.

This is not enough. Richmond has not presented evidence showing how this employee would have influenced others to terminate her. And no surprise. The record shows that TeamOne honored Richmond's demands to take full maternity leave by starting to train other employees to cover her workload. And several different TeamOne and UPS employees complained about Richmond's conduct on their own accord. She was ultimately terminated on those bases.

Lastly, Richmond contends that there is a factual dispute about who "controlled" her employment—TeamOne or UPS. The UPS National Account Manager was apparently disappointed to learn about her termination.

It is not obvious why that matters, though. There is no indication that this employee knew about the several complaints filed against Richmond, or about her refusal to comply with TeamOne's specific safety protocol. And

No. 24-40815

we decline her subtle invitation to dive into whatever tangential employment contract dispute may exist between TeamOne and UPS.

We AFFIRM.